So we'll start this morning with a bail motion in United States v. Vargas, 19-965. Thank you. Good morning. Good morning. May it please the court. Thank you very much. I'm Zachary Margulis-Onema, and I represent the defendant, Appellant Luis Omar Vargas in this appeal of the decision on bail pending appeal. Mr. Vargas was sentenced to two years, which he has not begun serving yet. He is at liberty in the community. And the parties, I think, are in agreement based on the papers that he does not pose either a flight risk or a danger to any person or the community in general. So we're really here to talk about the substantialness of the questions that we've raised. I'm not ready to argue the whole appeal, but I think we have identified seven questions, actually, all of which are substantial and most of which would lead to reversing the conviction if they were decided in Mr. Vargas' case. When are your opening briefs due? Is that? July? I'm not sure. Yeah, we've got another couple of months. So Mr. Vargas has a surrender date of June 5th, yeah. And he only has a two-year sentence, so really by the time the appeal is completed, he will have served a very large portion of that sentence in the normal course. That's true of any two-year sentence, right? Yes. Do you have any interest in expediting your brief? I don't. It was a two-week trial. I mean, we asked for that date. That's all right. Yeah, and I think it does bring up complicated questions. I think both counsel have managed to brief the substantialness of them in the time allotted before the surrender date. So let me get to the questions. I think the government's main argument, and I hope I did file a reply brief late on Thursday, I mean within the time, but late Thursday night, so I hope you got a chance to see it. The government's basic argument is, well, there was overwhelming evidence, so even if there were a few mistakes made at trial, the evidence, they wouldn't lead to reversal. What was wrong with the conscious avoidance instruction? That's your principle. That's one of your principle arguments. Right. There was no factual basis for it. It's a pretty tight rule that we have to both – the government has to show both that we've denied knowledge on a material issue and that there's a factual basis to show not just that he's denying knowledge, but that he's taking steps to not know what's going on, know the illegal nature of the payments to patients or that billing was done in a fraudulent manner. We ratified a conscious avoidance instruction in a number of cases. I'm familiar with the securities fraud cases where more or less that set of facts exists, but there's not much evidentiary basis, but there is some reason to believe, particularly when the defendant denies any knowledge, that a conscious avoidance instruction is appropriate. Here's the reason it was so insidious, whether it was merited or not, was because he denied – he didn't deny any knowledge. He denied particular knowledge. He testified for three days, Your Honor, and he was really, really well cross-examined, and there was wide latitude given, much wider than my examinations of certain witnesses, to the examination of him, and in that he admitted he wasn't supposed to be doing this dentistry. He knew that, but he had nothing to do with the billing and with the fraud. He was getting a hundred – He was doing transporting cash to and from New Jersey. Well, that was – he was cross-examined thoroughly on that, and that was cash to pay salaries to other – his understanding was that was cash to pay salaries to other employees. Isn't that a strange way to pay salaries? Shouldn't that have put him on notice? The guy's from Peru. He barely speaks English. You know, he really doesn't speak English. I always communicated with him in Spanish. He – what may seem strange to you and to me, I don't think seems strange enough to rise to the level of criminal. But the patients come in. They have – their condition is terrible. They're asking for money. There are all sorts of different red flags on the record that he disclaims any real knowledge of. Well, he doesn't disclaim knowing the conditions of the patients. I don't – he disclaims knowledge of the billing procedures. He disclaims knowledge of the purpose of those payments. And, again, there's seven issues. I mean, even if you're not inclined on the conscious avoidance, let me move on to the others. I mean, for example, there was the suite of issues at the end where any one of them may not be prejudicial in itself, but the fact of the repeat – that we were not allowed to figure out – so at the closing argument, counsel for the government had the huge blowup of one text message where he named some insurance companies. And there's a minute delay from the response from the – when the text message comes from Dr. Dick and Jill, who no one denies was involved in the fraud, and the response from my client. The – we don't know the context of those messages. He testified about it, but there's a finger on the scale of his testimony. He testifies for three days, but he's not allowed to examine the officer who went and grabbed those messages. And we don't know what else was there. Now, that raises a substantial question, you know, under Rule 403 as a technical matter. It also, when combined with the other things that we put in our brief – I see my time is out – raises a substantial – is enough that it would have led to reversal if we had won those mistakes. Thank you very much. Thank you, Your Honor. Mr. Lee. Good morning. May it please the Court. Alexander Lee for the government. The defendant, Mr. Vargas, was convicted in less than three hours by a jury of all counts. And despite this conviction, the defendant is now asking the court to reverse the decision of the district court and give him bail pending appeal. We don't believe the defendant has met his burden to prove by clear and convincing evidence that there is any substantial question, much less a question of – What was the factual predicate for the conscious avoidance instruction? Yes, Your Honor. I think the defendant is raising two separate conscious avoidance issues, one with respect to the kickbacks and one with respect to the health care fraud. With respect to the kickbacks, I think it's pretty simple. There was testimony by Katherine Ramos, the biller, that the defendant accompanied her on trips to pick up cash from the dentist, Dr. Dickenjill, that the cash was intended for the purpose of paying both the recruiters and also the patients, that both of them knew that that was the purpose, that they would count the cash in the car, that they would transport the cash back to the clinic, they would give the cash to Anna Jones, the receptionist who would actually make the payments, and that at one point – Your Honor, you mentioned the condition of the patients, but at one point that Ms. Ramos even asked the defendant personally, why are we making these payments to these individuals who are in such terrible condition? I think all of those bright red flags for Ms. Ramos were the exact same flags for the defendant, and he either was aware or should have been aware of the kickbacks. With respect to the health care fraud, I think the defendant's argument is that he wasn't aware of the billing. He didn't have anything to do with the billing. But I think there was substantial evidence at the trial that, in fact, the defendant was writing down the identity of the health care insurers' membership card numbers on the charts. This is shown in the undercover operations, that the defendant was engaged in text messages with Dr. Dickenjill, including the one that we've identified, where he talks specifically about the different health insurers and signals that he's aware that Fidelis pays more than the other insurers. In addition to that, Your Honor, I would point the Court to two meetings in late 2016, all hands-on-deck meetings that Dr. Dickenjill called. These meetings were attended – two meetings were attended by Anna Jones, the receptionist, by Ms. Ramos, the biller, and by the defendant, as well as Dr. Dickenjill. And at these meetings, Dr. Dickenjill told the four of them that he was having problems with Medicaid, that Medicaid was asking for the charts. And Ms. Ramos testified at the trial that that, to her, was a bright red flag, that something was going on with Medicaid, that something was wrong with the charts. Your Honor, I think combined with the fact that the defendant was personally writing down operations – excuse me, procedures that were not completed, that was shown – I want to ask you a hypothetical. Yes, Your Honor. Had your adversary acceded to an expedited appeal schedule, would you have any objection? No objection, Your Honor. When is the government's brief currently due? The government hasn't put in its sentence – its scheduling letter yet, Your Honor. I think the – setting aside the conscious avoidance issue, the other issue raised by counsel for the defendant was the search of Dr. Dickenjill's phone. This is a search that was completed and yielded text messages, including the text message that was very significant because it identified the health insurance companies in a text message by the defendant. Frankly, it's not exactly clear to me what the purpose of this intended cross-examination would be. It appears from the reply brief that the defendant would have wanted to argue that the search was somehow incomplete or missed materials or perhaps even challenged the authenticity of the critical text message. The district court held, when this argument was presented, that all of these are evidentiary questions that should have been raised prior, that should not have been saved for the moment to be argued in front of the jury, that that risked confusing the issues and confusing the jury and going down a fishing expedition, particularly when counsel for the defendant acknowledged to the district court that he really had no basis for challenging the diligence or the scope of the search that was performed by Special Agent K. So, Your Honor, we really don't believe that there are any substantial issues, certainly nothing warranting reversal or a new trial. Unless the court has any further questions, we just urge that the decision of the district court be affirmed. Thank you. We'll reserve the decision. Mr. Margolis, I just want to confirm again that in answer to Judge Lynch's question, you are not interested in an expedited appeal. Is that correct? In terms of the briefing, right, if bail were granted pending appeal, we would do it much faster. I mean, if you ordered bail pending appeal and me to get my briefs in sooner, we would definitely do that. Wouldn't it work the opposite? Sorry? Well, yeah. I mean, if he's out, we'll take as much time as we possibly can. But if he's— If bail is denied, you're not interested in an expedited appeal. No. I mean, no. That's fair. Thank you. Thank you. We'll reserve the decision. And obviously, under the circumstances, we'll try to issue a decision as quickly as possible. Thank you very much.